Elinor R. **BACON**, et al.,* Petitioners,

v.

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,** Respondent.

Appeal No. 84–1598.

United States Court of Appeals, Federal Circuit.

March 15, 1985.

---

* The names of the petitioners are listed in the appendix.

William A. Dobrovir, Dobrovir & Gebhardt, Washington, D.C., argued for petitioners. With him on the brief were Joseph D. Gebhardt and David L. Sobel, Washington, D.C.

Eileen P. Fennessy, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With her on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Washington, D.C.

William C. Cregar, Asst. Gen. Counsel, Dept. of Housing and Urban Development, Washington, D.C., of counsel.

Before RICH and NIES, Circuit Judges, and RE, Chief Judge.**

NIES, Circuit Judge.

This appeal is from the decision of the Merit Systems Protection Board (MSPB or board) in Case No. DC03518310188 upholding the reduction-in-force (RIF) by the Department of Housing and Urban Development effected in late 1982. 20 M.S.P.R. 408. We affirm.

### Background

Petitioners are 54 individuals affected by the 1982 RIF in the Department of Housing and Urban Development (HUD or agency). The agency issued a general RIF notice on August 20, 1982, informing employees that "To resolve workload and skills imbalances, the Department has decided to conduct a Reduction-in-Force (RIF)." On September 29, 1982, specific RIF notices were issued to several hundred central office employees, including petitioners, setting the effective dates of the RIF, and

** The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

again stating that the reason for the RIF was "workload and skills imbalances."

Arguing that the RIF effected a "reorganization" of the department, the employees' union, the American Federation of Government Employees, filed suit in the U.S. District Court for the District of Columbia, to enjoin the RIF on the ground that the HUD action was in violation of the Appropriations Act of 1983, Pub.L. 97–272, 96 Stat. 1160, which forbade the expenditure of agency funds for a reorganization without Congressional approval. The district court enjoined the proposed RIF action. On appeal, the D.C. Circuit held that the prohibition was unconstitutional. *American Federation of Government Employees v. Pierce*, 697 F.2d 303 (D.C.Cir.1982). The department immediately proceeded with the RIF as proposed.

Petitioners then appealed the agency action to the MSPB, contending, *inter alia*, that the agency did not invoke RIF procedures for a proper reason. More particularly, petitioners argue that the stated reason, "workload and skills imbalances" is not one of the purposes authorized for a RIF by the controlling regulation, 5 C.F.R. § 351.201(a). The cited regulation provides as follows:

(a) Each agency shall follow this part [Part 351—Reduction-in-Force] when it releases a competing employee from his/her competitive level by separation, demotion, furlough for more than 30 days, or reassignment requiring displacement, *when the release is required because of lack of work, shortage of funds, reorganization, reclassification due to change in duties, or the exercise of reemployment rights or restoration rights.* [Emphasis added.]

The agency argued that "workload and skills imbalances" were "umbrella" terms

referring to a combination of the circumstances set out in the regulation.

The presiding official ruled against petitioners, noting that "There is no requirement ... that RIF notices and agency discussions use only those specific terms in 5 C.F.R. § 351.201(a) to describe a RIF [or] that the agency only identify one of the reasons as the basis for a RIF." Relying on internal agency memoranda listing "Reduction in ceiling levels", "Gradual decrease in duties" and "Elimination of specific functions" as the reasons for abolishment of positions, the presiding official found "that the agency has demonstrated by a preponderance of the evidence that there was a *shortage of funds* (reductions in budget and ceiling) and a *lack of work* "[1] (emphasis added) and that there was "no error in characterizing this as a workload and skills imbalance." The presiding official also rejected petitioners contention that the RIF was politically motivated and that the stated reason was only a pretext.

The full board, in a lengthy opinion, denied a petition filed by petitioners seeking to overturn the initial decision. Since the agency had not relied on shortage of funds as a reason for the RIF, the board assumed *arguendo* that the presiding official had exceeded her authority in her finding in this respect. However, the board found no error in her conclusion that the agency's reasons for the RIF were valid under 5 C.F.R. § 351.201(a), stating:

[T]he Board finds that the evidence supports the agency's contention that, given the ceiling reductions and the fact that excess positions or vacancies did not always exist in the areas where they were needed, the imbalances formed a proper RIF reason since they equated to a *lack of work* or a *reorganization....*

1. With regard to "lack of work," the presiding official relied on testimony and documentation submitted by the agency which showed that the agency had been in a hiring "freeze" since 1980 and had been faced with budget reductions since fiscal year 1981. Some programs within the agency had been altered and others had

been eliminated. As a result of these changes, some positions were unnecessary, certain offices within the agency were understaffed, and others were staffed with persons not having the necessary skills. Vacancies created through attrition were not necessarily in positions which the agency no longer needed.

It is true that the agency did not advance reorganization as a reason for the RIF before the actions were effected. As noted above, it was then Congressionally prohibited from expending funds for a reorganization. That prohibition, however, was later found unconstitutional.... [A]ppellants assert that the Board cannot justify the RIF on a basis other than that invoked by the agency. We find, however, that the phrase workload and skills imbalances cited by the agency was broad enough to encompass lack of work or a reorganization.... [Emphasis added; citations omitted.]

On the merits, the board found that substantial evidence supported the stated reason for the RIF.

The board also addressed, *inter alia,* petitioners' contentions, raised again on appeal to this court that: (1) the presiding official had erred in not requiring the Honorable Samuel R. Pierce, then Secretary of HUD, to testify as a witness; (2) the presiding official had improperly denied their request for class action treatment; and (3) the Secretary's decision to cut budget and ceilings was a violation of the Impoundment Control Act of 1974.

With respect to the denial of the request for Secretary Pierce to testify, the board noted that petitioners sought to elicit from the Secretary testimony that the RIF was conducted for an invalid reason, i.e., that he had reduced the agency's budget and ceiling because it was in keeping with the "philosophy of the administration." The board declined to "second-guess" the Secretary's authority to set those levels and, hence, found no abuse of discretion in the presiding official's denial of the Secretary's appearance. The board refused to consider petitioner's argument that the Secretary's action violated the Impoundment Control Act, since that issue had not been raised before the presiding official.

With respect to the class action argument, the board held that *petitioners* had shown no harm from the presiding official's denial of class certification.

## *Issues*

We are presented with the following issues in this appeal:

(1) Was the RIF conducted for proper reasons under 5 C.F.R. § 351.201(a)?

(2) Did the presiding official abuse her discretion in not requiring Secretary Pierce to testify as to his reasons for the RIF?

(3) Did the board correctly decline to consider whether the Secretary's action was a violation of the Impoundment Control Act?

(4) Did the presiding official properly deny class action certification?

## I.

### *Reasons for the RIF*

■ The standard of review of an MSPB decision by this Court is set forth at 5 U.S.C. § 7703(c). The court must sustain the board's decision unless it is found to be:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

*Phillips v. United States Postal Service,* 695 F.2d 1389, 1390 (Fed.Cir.1982); *Kochanny v. Bureau of Alcohol, Tobacco & Firearms,* 694 F.2d 698, 700 (Fed.Cir.1982). In applying this standard to a RIF case, this court has held:

An agency is accorded wide discretion in conducting a reduction-in-force; absent a clear abuse of that discretion, a substantial departure from applicable procedures, a misconstruction of governing statutes, or the like, we do not upset a final agency decision....

*Cooper v. Tennessee Valley Authority,* 723 F.2d 1560, 1562 (Fed.Cir.1983) (quoting *Dancy v. United States,* 668 F.2d 1224, 1226, 229 Ct.Cl. 300 (1982)). *See also Grier v. Dept. of Health & Human Services,* 750 F.2d 944, 946 (Fed.Cir.1984).

If an agency establishes that a RIF was undertaken for any of the five reasons set forth in 5 C.F.R. § 351.201(a), the action must be upheld. Petitioners do not contend that the "magic words" in the regulation need be used in the agency's RIF notice. Rather, they maintain that the stated reason for the subject RIF, "workload and skills imbalances," does not fall within any of the categories listed in the regulation.

Contrary to petitioners' view, we agree with the board's determination that correction of workload and skills imbalances comes within the scope of a "reorganization." The term "reorganization" is defined in 5 C.F.R. § 351.203(f) as "the planned elimination, addition, or redistribution of functions or duties in an organization." Due to budget constraints, program changes, attrition, and a hiring freeze, HUD was understaffed in certain areas and overstaffed in others. Note 1, *supra.* HUD sought to remedy the latter type of imbalance in its headquarters by eliminating positions in certain central offices, an action which clearly falls within the term "reorganization." Indeed, this was the position of petitioners in the D.C. Circuit litigation. It is apparent that HUD originally avoided use of the term "reorganization" because of the existence, at the time the RIF was proposed, of the statutory prohibition against reorganization without Congressional approval. Once that restraint was eliminated by the decision in the prior litigation, that category was also relied on by HUD. Whether "workload and skills imbalances" fit within other authorized bases, as well as reorganization, we need not decide. We agree with the MSPB that the RIF was conducted for a reason within 5 C.F.R. § 351.201(a).

Further, substantial evidence supports this basis for the RIF. That HUD headquarters had exceeded personnel ceilings at the expense of field offices is amply supported by the testimony of the Assistant Secretary for Administration. Further testimony supports that there was a decline in the need for certain types of specialists. The testimony of witnesses for petitioner, that they had observed no workload and skills imbalances, was properly disregarded by the presiding official for the reason that these witnesses were not members of management and were not involved in the RIF determination. Workload and skills imbalances, as used here in the budgetary sense, cannot be "observed." Even though all employees in HUD headquarters may have had work to do, a reorganization might, nevertheless, have been required to fulfill overall agency objectives.

## II.

### Requested Testimony of Secretary Pierce

■ Petitioners asserted that it was error to deny their request to call Secretary Pierce as a witness who, they contend, was the only individual who could testify first-hand as to the basis for the RIF decision. Petitioners misapprehend the scope of judicial review of administrative action. Contrary to petitioners' view, the MSPB and this court are not empowered, under the circumstances here, to look behind the stated basis for the RIF. Where an agency undertakes administrative action without stating reasons therefor, a court may set aside such action. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). However, the Supreme Court has unequivocally drawn the line against inquiry into the mental process of an agency head.

■ In *United States v. Morgan*, 313 U.S. 409, 421–22, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941) (*Morgan IV*), where the Secretary of Agriculture's decision setting maximum rates to be charged by market agencies for their services at the Kansas City Stockyards had been set aside, the Supreme Court admonished the lower court for looking behind the record upon remand, stating:

Over the Government's objection the district court authorized the market agencies to take the deposition of the

Secretary. The Secretary thereupon appeared in person at the trial. He was questioned at length regarding the process by which he reached the conclusion of his order, including the manner and extent of his study of the record and his consultation with subordinates. His testimony shows that he dealt with the enormous record in a manner not unlike the practice of judges in similar situations, and that he held various conferences with the examiner who heard the evidence. Much was made of his disregard of a memorandum from one of his officials who, on reading the proposed order, urged considerations favorable to the market agencies. *But the short of the business is that the Secretary should never have been subjected to this examination.* The proceeding before the Secretary "has a quality resembling that of a judicial proceeding." *Morgan v. United States,* 298 U.S. 468, 480 [56 S.Ct. 906, 911, 80 L.Ed. 1288]. Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that "it was not the function of the court to probe the mental processes of the Secretary." 304 U.S. 1, 18. Just as a judge cannot be subjected to such a scrutiny, compare *Fayerweather v. Ritch,* 195 U.S. 276, 306–07, [25 S.Ct. 58, 67, 49 L.Ed. 193], so the integrity of the administrative process must be equally respected. See *Chicago, B & Q Ry. Co. v. Babcock,* 204 U.S. 585, 593 [27 S.Ct. 326, 327, 51 L.Ed. 636]. It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other. *Unit-*

*ed States v. Morgan,* 307 U.S. 183, 191 [59 S.Ct. 795, 799, 83 L.Ed. 1211]. [Emphasis added.]

*Accord, Montgomery Ward & Co. v. Zenith Radio Corp.,* 673 F.2d 1254, 1263–64 (CCPA 1982) (Zenith, seeking to have settlement agreement between the Secretary of Commerce and importers overturned, precluded from inquiring "into the Secretary's mental processes in deciding upon settlement.").

Both *Morgan IV* and *Montgomery-Ward* are apposite to the situation presented here. The MSPB has no authority to probe into the mental processes of the Secretary to ascertain whether a particular "political philosophy" influenced the RIF decision. The reasons were formally stated and the function of review here is to determine whether the record supports the stated reasons or not. A wider inquiry is inappropriate in this case. Accordingly, the presiding official properly refused to require the Secretary to testify.

## III.

### *Violation of Impoundment Act*

■ Petitioners argue that the board erred in refusing to consider the illegality of the agency's action under the Impoundment Control Act, 2 U.S.C. §§ 681–688. Specifically, petitioners contend that the agency's "internal personnel ceilings" constituted a "decision to spend less than what Congress had budgeted," and that the decision was implemented (through the RIF) without following the procedures set forth in the Act.[2] The government argues that petitioners raised this issue belatedly and that, in any event, no violation of the Act was established.

While petitioners' argued to the presiding official that "any reduction in person-

---

**2.** The Act provides that if the Executive branch determines that all or part of a budget authority is not required, or desires it to be rescinded or deferred for reasons of fiscal policy, the President must submit a special message to Congress proposing rescission or deferral of the relevant portion of the budget. 2 U.S.C. §§ 683(a), 684(a). No rescission may go forward unless Congress expressly approves the proposal. 2 U.S.C. § 683(b). Deferral, on the other hand, is permitted unless either house of Congress vetoes the deferral by resolution. 2 U.S.C. § 684(b). The constitutionality of § 684(b) is seriously questioned in view of *Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

nel ceiling ... must result from Congressionally imposed budget reductions," petitioners apparently made no mention of the Act itself to the presiding official. Even if we were to conclude that the issue was raised to the presiding official, petitioners have failed to show that the issue was developed by evidence and argument to any significant extent. Accordingly, the board could reasonably conclude that the issue was newly raised. In any event, we see no purpose in a remand for the board to consider a record that is patently deficient insofar as establishing violation of the Act.

### IV.

*Class Action Certification*

Since we conclude that the RIF was conducted for a valid and authorized reason, the issue of whether a class action should have been certified is rendered moot.

### V.

The agency action not having been shown to be contrary to the statute or regulations or otherwise unlawful, the decision of the MSPB is *affirmed.*

AFFIRMED.

#### APPENDIX

| Appellant | Docket Number |
| --- | --- |
| Bacon, Elinor | DCO3518310188 |
| Bankins, Veronica | DCO3518310173 |
| Beverly, Tanya | DCO3518310275 |
| Blackwell, George | DCO3518310242 |
| Brintnall, Michael | DCO3518310244 |
| Cheek, Sharon | DCO3518310276 |
| Chonez, Kathy | DCO3518310166 |
| Cooper, Margaret | DCO3518310273 |
| Crumpe, Priscilla | DCO3518310246 |
| DeMuro, Joseph | DCO3518310247 |
| Dornan, Paul | DCO3518310248 |
| Easterling, Janet | DCO3518310249 |
| Gaither, Paula | DCO3518310165 |
| Gillis, Minnie | DCO3518310250 |
| Grady, Paul | DCO3518310251 |
| Hyde, Thomas | DCO3518310183 |
| Jones, Ernest | DCO3518310182 |
| Jones, Ronald | DCO3518310256 |
| Knott, Carol | DCO3518310175 |
| Langbehn, Yolande | DCO3518310257 |
| Martin, Henry | DCO3518310167 |
| Morgan, Roslyn | DCO3518310259 |
| Murphy, Debra | DCO3518310164 |
| Nicodemus, Peggy | DCO3518310260 |
| Overton, Vivian | DCO3518310190 |
| Prentice, Isaac | DCO3518310168 |
| Scott, Albert | DCO3518310280 |
| Shafran, Nina | DCO3518310274 |
| Simmons, Loretta | DCO3518310262 |
| Smith, Barbara | DCO3518310263 |
| Spillone, Edward | DCO3518310163 |
| Stevens, Deborah | DCO3518310265 |
| Stucker, Jennifer | DCO3518310181 |
| Swann, Deborah | DCO3518310266 |
| Trammell, Cassandra | DCO3518310267 |
| Vann, Thessalonians | DCO3518310185 |
| Williams, Clifton | DCO3518310174 |
| Baskin, Veronica | DCO3518310177 |
| Brace, Paul | DCO3518310241 |
| Brown, Pattie | DCO3518310245 |
| Ervin, Evon | DCO3518310189 |
| Ganley, Patricia | DCO3518310186 |
| Holman, Gregory | DCO3518310184 |
| Hutchinson, Sam | DCO3518310253 |
| Jackson, Claretha | DCO3518310254 |
| Jackson, Joan | DCO3518310255 |
| Janus, Richard | DCO3518310162 |
| Lewis, Joseph | DCO3518310169 |
| McCormick, Delia | DCO3518310258 |
| Mitchell, Gerald | DCO3518310176 |
| Smith, Penelope | DCO3518310417 |
| Sweeney, Margaret | DCO3518310418 |
| Wachs, Melvin | DCO3518310268 |
| Wynn, Mark | DCO3518310271 |