**Akhouri A. SINHA, Petitioner,**

**v.**

**VETERANS
ADMINISTRATION, Respondent.**

**Appeal No. 84–1733.**

United States Court of Appeals,
Federal Circuit.

July 25, 1985.

Phillip L. Powell, LeVander, Zimpfer, Zotaley & Vander Linden, Minneapolis, Minn., argued for petitioner.

Denise Butler Harty, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With her on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Robert A. Reutershan, Asst. Director, and Lynn J. Bush, Washington, D.C. Also on brief was C. Charles Caruso, Veterans Admin., St. Paul, Minn., of counsel.

Before FRIEDMAN, NIES and NEWMAN, Circuit Judges.

FRIEDMAN, Circuit Judge.

This petition for review challenges the decision of the Merit Systems Protection Board, affirming the petitioner's removal from his position as a Research Physiolo-

gist with the Veterans Administration (VA) through a reduction in force, 21 M.S.P.R. 681. We affirm.

## I

The petitioner was employed by the VA Medical Center in Minneapolis, Minnesota (Medical Center), as a GS–14 Research Physiologist. He functioned both as Chief of the Research Electron Microscopy and Radioautography Laboratory, and as an independent researcher. The Central Office of the VA supplied funds to the Medical Center to pay both his salary and the expenses of his independent research. To obtain the research funds, the petitioner had to obtain the approval of his research proposals by a Merit Review Board of the VA. The Merit Review Boards customarily disapprove—and thus deny funding for—approximately 20 to 40 percent of the projects submitted.

In 1979 the VA Central Office distributed to the regional offices a circular which stated that the Central Office would continue to pay a researcher's salary "as long as the facility receives medical research support in his/her behalf or he/she has significant research support from extramural sources." This policy was not explicitly incorporated in the critical elements of the performance standards the VA had established for petitioner's position pursuant to 5 U.S.C. § 4301, *et seq.* (1982).

The petitioner's field of research was prostatic cancer. Prior to 1977, the Merit Review Board had approved two of his research projects. In 1979, however, the Board rejected the petitioner's latest research proposal as "too broad, too ambitious, and too diffused." In 1980, the petitioner submitted another research proposal to the Merit Review Board. This proposal attempted to meet the Board's criticism of his 1979 proposal. The Board also disapproved the 1980 proposal. The petitioner submitted that proposal to the VA's Central Office Appeals Committee, which upheld the Merit Review Board's action.

Following the petitioner's failure to obtain Merit Review Board approval of his 1980 research project, with its resultant termination of funds for this research, the VA Central Office advised the Medical Center that it no longer would provide the funds to pay the petitioner's salary. Upon receiving this information, the Medical Center's Research Service (of which the petitioner was a part) decided to abolish the petitioner's position through a reduction in force rather than to finance the position with funds from other portions of the Medical Center's budget or to eliminate other positions. By letter dated July 20, 1981, the Medical Center informed the petitioner of the reduction in force, and offered him, in lieu of separation, a GS–9 position (in which he would retain his GS–14 grade and pay for two years). Petitioner accepted this demotion under protest and appealed the VA's action to the Merit Systems Protection Board (Board).

After a hearing, the presiding official, in what the Board described as "a thorough, careful and extensive initial decision," upheld the reduction in force. He held that the reduction in force was made for one of the reasons for which the governing regulation (5 C.F.R. § 351.201(a) (1983)) permits a reduction in force, namely, a "shortage of funds." Alternatively, the presiding official held that the reduction in force was taken for another permissible reason, namely, a reorganization. He found that "the agency has established by a preponderance of the evidence that it properly initiated the reduction-in-force action at issue for reasons specified in 5 C.F.R. 351.-201(a) and that it processed the action in accordance with relevant regulations."

The Board granted review, affirmed the presiding official's decision, and sustained the demotion. The Board stated

that while the decision of the Research Service to invoke the RIF regulations was initially triggered by the withdrawal of research support money by the agency's Central Office, the record reveals that the agency had the option to retain [the petitioner's] position under alternative funding, but instead made the independently supportable discretionary decision to eliminate the position.... This

decision clearly fell within the agency's management discretion regarding the planning of work and organization of the work force to accomplish agency objectives within available resources, *see* FPM chapter 351, subch. 1–5(a), and constituted a proper reorganization as defined in 5 C.F.R. § 351.203(f).

## II

The petitioner does not here challenge the decision of the VA to stop furnishing the Medical Center with funds to pay his salary after he had lost VA Central Office funding for his research activities as a result of the Merit Review Board's rejection of his 1980 research proposal. That decision involved the essence of agency management discretion. As the presiding official pointed out:

> Subchapter 1–5(a) of Chapter 351 of the Federal Personnel Manual indicates that an agency retains the responsibility and authority for planning the work and organizing the workforce to accomplish agency objectives within available resources; and that only the agency can decide which positions are required, where they are to be located, and when they are to be filled, abolished, or vacated. If an agency is the repository for such authority, then the agency's determinations of how it will allocate its resources are subject to deference.

The VA acted well within its discretion in deciding that it would no longer provide funding for the salary of a researcher whose projects were no longer being funded. The Board upheld the following conclusion of the presiding official:

> There is no impropriety in the agency's development of a funding policy which is consistent with the purpose of the Research Service and which is entirely within the agency's authority and responsibility: the pursuit of the most promising and worthwhile kinds of research.

A. The foregoing reasoning and analysis also require rejection of the petitioner's apparent contention that an asserted basis for the reduction in force—a shortage of funds—did not exist. The VA Central Office's termination of funding for the petitioner's salary meant that the Medical Center no longer had available the funds it theretofore had used to pay the petitioner's salary. It then had various choices: eliminating the petitioner's position, eliminating other positions and using the funds thereby made available to pay the petitioner's salary, or transferring funds from other sources to pay the salary.

The decision on which course to follow was also within managerial discretion. We agree with the presiding official and the Board that the Medical Center did not abuse its discretion in selecting the course it chose to follow of eliminating the petitioner's GS–14 position rather than continuing it at the expense of some other activity or positions it considered more important.

Realistically, the Medical Center's decision to abolish the petitioner's position resulted from a shortage of funds because the Medical Center no longer had the funds to pay the salary of the position that the VA Central Office previously had supplied. The presiding official correctly noted that "[t]he result of the withdrawal of salary support [by the Central Office] was that there was a shortage of money for the specific purpose of funding the [petitioner's] position regardless of any surplus or discretionary funds which existed in the Research Service or elsewhere in the Minneapolis Medical Center or the Veterans Administration." The reduction in force thus was based upon a permissible ground under the regulation, namely, a "shortage of funds" and was valid. *Bacon v. Department of Housing and Urban Development*, 757 F.2d 265, 269 (Fed.Cir.1985).

B. The petitioner contends, however, that the real reason for his removal was not a shortage of funds but his failure to obtain funding for his research projects; that this need to obtain funding was part of the duties of his position but was not included in his job description; that since he had not seen the 1979 circular stating the funding requirement, he was unaware of it; and that if he had been informed of

the requirement, he might have been able to obtain funding for his project from outside the agency. He also argues that since his removal was based upon deficiencies in the performance of his duties (failure to obtain funding), the removal proceedings should have been brought pursuant to 5 U.S.C. § 4301 *et seq.* (1982) (which governs removal for "unacceptable performance") rather than accomplished through a reduction in force. As a corollary, he urges that the reduction in force was invalid because made for reasons personal to him. *See Wilburn v. Department of Transportation,* 757 F.2d 260, 262 (Fed.Cir.1985); *Keener v. United States,* 165 Ct.Cl. 334, 338–39 (1964).

We agree with the presiding official's and the Board's rejection of this contention. As the Board stated:

[T]he agency had properly made [the petitioner's] ability to obtain research support funds, either as a result of MRB [Merit Review Board] approval or his proposals or from extramural sources, a *de facto* prerequisite of his position.... While the MRB process inevitably entailed an evaluation of the substantive quality of [the petitioner's] research proposals, that element of the process does not lead us to believe, absent a showing of bad faith, that the RIF action which ultimately resulted therefrom was taken for reasons personal to [the petitioner] in circumvention of his adverse action procedural rights under 5 U.S.C. chapter 75.

The petitioner occupied an unusual position with the agency in that his independent research activities, to which the presiding official found that he devoted between 40 and 95 percent of his time, necessarily were dependent upon the availability of funds for their performance. The presiding official pointed out that

the Chief of the Research Service testified that, regardless of whether this requirement for research support was stated in the [petitioner's] position description, essentially the entire budget for his service is determined by the ability of each independent researcher to obtain

Merit Review support for his research programs.... In addition, he testified that the money for his service's budget comes listed under the name of each approved researcher....

Thus, the Merit Review Board's decision not to provide funding for the petitioner's project was, in effect, a determination that the benefits of his independent research proposal, in comparison to those of other proposals the Board considered, did not warrant utilization of the agency's finite resources because, in the language of the VA's statutory duty, it held out less prospect of "contribut[ing] to the Nation's knowledge of disease and disability," 38 U.S.C. § 4101(c) (1982), than the projects it approved. The petitioner was removed from his GS–14 position, not because his failure to obtain VA funding constituted unsatisfactory performance, but because the VA made the reasonable managerial judgment that it no longer wanted to pay for a researcher whose project the scientists on the Merit Review Board decided not to support.

The petitioner knew that the VA Central Office had supplied the funds for two of his prior research projects following the Merit Review Board's approval of those projects. For some years the VA apparently had followed the practice of requiring researchers to obtain Merit Review Board approval for their projects before they would fund them. It summarized that practice in the 1979 circular. The petitioner could hardly have been unaware that if the Merit Review Board did not approve his project, the Central Office's funding for his research would be eliminated and there would be no VA funds available for his research.

We cannot say that, considering all the circumstances, the Medical Center was barred from eliminating the petitioner's project when, as a result of the Merit Review Board's disapproval of his 1980 proposal and the Central Office's consequent refusal to fund his research projects, the Central Office eliminated the funds to pay his salary. The Medical Center's action

was a proper reduction in force since it was taken because of a "shortage of funds" and, as the Board explained, it also "constituted a proper reorganization" because it involved "the agency's management discretion regarding planning of work and organization of the work force to accomplish agency objectives within available resources...."

### CONCLUSION

The decision of the Merit Systems Protection Board sustaining the demotion of the petitioner by reduction in force is affirmed.

AFFIRMED.