**Rudolph BURIANI, Petitioner,**

v.

**DEPARTMENT OF the AIR FORCE, Respondent.**

**Appeal No. 85–1890.**

United States Court of Appeals, Federal Circuit.

Nov. 8, 1985.

Charles L. Wiest, Jr., of Vickers, Moore and Wiest, P.C., St. Louis, Mo., argued for petitioner.

Alvin A. Schall, Dept. of Justice, Washington, D.C., argued for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Asst. Director, (Curtis L. Bentz, Major, USAF, Office of the Judge Advocate General, of counsel).

Before BENNETT, NIES and BISSELL, Circuit Judges.

NIES, Circuit Judge.

Petitioner Rudolph Buriani seeks review of the decision of the Merit Systems Pro-tection Board (MSPB or board), 29 M.S.P.R. 226, sustaining his demotion from Flight Instructor GM–2181–13, an air reserve technician (ART) position, to Public Affairs Specialist, GS–1035–09, a non-ART position. We affirm on different grounds.

## Background

Major Buriani occupied a civilian position in the Air Force which required his main-taining membership in the Air Force Re-serve. Air Force Reserve Regulation ("AFRESR") 40–2, section 3b (July 7, 1982) states that "ARTs who lose reserve mem-bership in their unit for reasons within their control will be separated from their civilian position." The regulation further provides that loss of reserve membership because of being twice deferred for pro-motion to lieutenant colonel is a reason within the individual's control. AFRESR 40–2, section 5c(8).

After Major Buriani twice was deferred for promotion to lieutenant colonel, he lost his active reserve membership. There-after, on November 25, 1983, the agency proposed to remove him from his ART posi-tion in accordance with AFRESR 40–2, sec-tion 3b. Eventually, however, the pro-posed removal was mitigated to demotion to the non-ART position of Public Affairs Specialist, GS–9.

Buriani appealed his demotion to the MSPB. In a pre-hearing telephone confer-ence, the board's presiding official stated that the Air Force would be required to "articulate a reason why the failure to be promoted was within [Buriani's] control and ... support the reason(s) by a prepon-derance of the evidence." The agency took exception to the presiding official's ruling and moved to have the matter certified for review by the full board. The agency urged that Buriani's non-promotion was ex-clusively a military determination, not sub-ject to review by the MSPB, and that the presiding official's decision placed the agency in the position of having to reliti-gate adverse material in petitioner's per-sonnel file.

The presiding official denied the agency's motion, ruling as follows:

> [T]he agency must articulate a reason why appellant's loss of reserve status, i.e., his failure to be promoted, was within his control, and it must support this reason with evidence. Since appellant lost his reserve status because of his failing to be promoted upon a second consideration, the agency must necessarily articulate why appellant was not promoted and why such failure was within his control.

> \* \* \* \* \* \*

> I explained that the prerequisite for determining the merits of the agency's action is an articulation of the specific reason for appellant's non-promotion. Such explanation can be provided by the promotion board member who evaluated appellant's qualifications, or in the absence of the availability of such board member, the criteria used by the promotion board in reaching its decision, the determinative weight applied for each or all of the criteria, and a showing that appellant's qualifications, on their face, fail to satisfy the determinative criteria. I further explained that the Board will not substitute its judgment for that of the promotion board to determine whether or not appellant should have been promoted, and that the Board will only determine whether the agency has articulated its reason and proven that such reason was within appellant's control.

At the hearing, the agency presented evidence of the criteria used by the selection board in determining an officer's suitability for promotion. The evidence included the instructions (i.e., the charge) of the Secretary of the Air Force to the selection board, testimony of Lieutenant Colonel Fisher who explained the selection procedures, and the testimony of Major General Leroy Bartman who served as president of the board which considered Buriani's promotion. The record establishes that members of the selection board were directed to assess such factors as job performance, leadership, professional competence, breadth of experience, job responsibility, academic education, professional military education, and specific achievements. In addition, the board members were instructed to judge each candidate for promotion on the "whole person" concept. After considering the general criteria and certain particulars in Buriani's file relating to his performance and his military training, the presiding official determined that the agency had met its burden of establishing by a preponderance of the evidence that Buriani's failure to attain promotion and the consequent loss of his reserve status were for reasons within his control.

On appeal, Buriani does not challenge the action of the selection board in not recommending him for promotion. Rather, he asserts that the agency did not prove that the reasons for his failure to be promoted were within his control.

The agency continues to assert that it should not have been required to articulate reasons for Buriani's failure to be promoted and that, in any event, the finding by the presiding official that Buriani's loss of reserve status was within his control is supported by substantial evidence.

## Analysis

Under the regulations applicable to Buriani's ART position, the loss of active reserve membership "within the individual's control" includes a loss resulting from the individual being "twice deferred for promotion to captain, major, or lieutenant colonel." AFRESR 40–2, section 5c(8).

Buriani here did not attack the validity of the regulation, but rather argues that under *Rolles v. Civil Service Commission*, 512 F.2d 1319 (D.C.Cir.1975), the regulation must be interpreted to give an employee the opportunity, as part of the MSPB hearing on demotion from his ART position, to contest the issue of whether his transfer to non-active reserve was within his control.

Buriani extrapolates from *Rolles* that the inquiry into the reasons behind his loss of active status must extend into the actual basis for his evaluation by the members of

the selection board. Each of the members of the selection board, per Buriani, had to be called as witnesses to state the specific reasons for his non-selection so that it could be determined whether the aggregate reasons were within his control. In Buriani's view, since General Bartman admittedly had no knowledge of the reasons for the other selection panel members' evaluations, the General's testimony with respect to his evaluation of Buriani's record and the weaknesses he perceived therein on which members might have relied is patently insufficient.

Buriani's objection to the content of General Bartman's testimony need not be considered. The short answer is that General Bartman should not have been required to testify at all.

█ The pertinent regulation declares that the loss of active reserve status because of failure to attain a promotion is a loss within the individual's control. In a case where the agency relies on failure to attain a promotion, the scope of the inquiry in the adverse action before the MSPB is limited to the question of whether an individual lost active status for that reason. In this case Buriani admitted that his loss of active reserve membership was due to his failure to attain promotion. That should have ended the inquiry in the adverse action proceedings. *See Zimmerman v. Department of Army*, 755 F.2d 156, 157 (Fed.Cir.1985) ("Board does not have the jurisdiction to examine military assignments and transfers.").

The presiding official reasoned, however, that:

If the phrase "beyond the employee's control" is considered words of art whose meaning is restricted to only those situations set forth in AFRESR 40–2, Para. 5.c., then the failure to achieve promotion to Lt. Colonel after second consideration is *per se* a reason within the employee's control. Such a narrow finding, however, would substantially preclude a defense against the adverse action based entirely on the failure to attain promotion.

In a layman's sense, the regulation may not represent the perceived realities of the situation. An individual who does not achieve a promotion is not likely to think in terms of "controlling" his own non-selection. However, this rationale is immaterial. The regulation represents the determination of the agency and OPM that *all* failures to achieve the types of promotion described therein fall in the category of a loss within the employee's control. Moreover, we have been pointed to no statutory prohibition which would preclude the *per se* rule of the regulation. Indeed, the regulation makes eminent sense to us. It prevents precisely the kind of wide ranging collateral inquiry into the selection process which Buriani sought to have the board undertake in this case. In addition, it also precludes the more limited inquiry made by the presiding official into Buriani's military record leading to a finding that the quality of Buriani's candidacy was within his control because, for example, he tardily undertook to attend command school. Such a finding has the appearance of fairness to Buriani but is, in fact, a meaningless gesture. Unless the selection process is defective, a matter which could be challenged only by direct review, a finding that a candidate could have done something more to improve his/her chances for promotion could be made in every case. Inherently, the selection process is made from among imperfect candidates, perfection not being the lot of humankind. In any event, the actual reasons for Buriani's non-selection by members of the selection board are unknown and unknowable to the MSPB. *See Bacon v. Department of Housing and Urban Development*, 757 F.2d 265 (Fed.Cir. 1985).

Contrary to the presiding official's analysis, the words "beyond the employee's control" *are* words of art whose meaning is provided in AFRESR 40–2, section 5c. The defense that the loss of active reserve status for failure of promotion was not within the control of the individual is precluded by virtue of that regulation.

AFFIRMED.