David L. JEFFRIES, Petitioner,

v.

DEPARTMENT OF the AIR FORCE, Respondent.

No. 92–3337.

United States Court of Appeals, Federal Circuit.

July 20, 1993.

Alexia McCaskill, Staff Counsel, American Federation of Government Employees, AFL–CIO, Washington, DC, argued for petitioner. With her on the brief was Mark D. Roth, Gen. Counsel, Charles A. Hobbie, Deputy Gen. Counsel. Of counsel was Stuart A. Kirsch.

Michael Colopy, Major, USAF, Trial Atty., Air Force Legal Services Agency, Rosslyn, VA, argued for respondent. With him on the brief was Norman F. Nivens, Lt. Colonel, USAF. Donna C. Maizel, Sharon Y. Eubanks and David M. Cohen, Department of Justice, Washington, DC, respondent.

Before NIES, Chief Judge, NEWMAN and SCHALL, Circuit Judges.

NIES, Chief Judge.

David L. Jeffries seeks review of the February 25, 1992, Merit Systems Protection Board (MSPB) decision in Docket No. AT07529010213, affirming the decision by the United States Air Force to remove Jeffries from his Air Reserve Technician position in the agency for nondisciplinary reasons, namely his discharge from the Air Force Reserves. We affirm.

I.

Certain civilian positions in the military departments owe their existence to agreement between the military agency and the Office of Personnel Management (OPM) that the positions may be restricted to persons

who are members of the active reserves. In the Air Force, such civilian jobs are termed Air Reserve Technician (ART) positions. ARTs are full-time civilian employees who are also members of the Air Force Reserve unit in which they are employed. In addition to their civilian assignments, ARTs are assigned to equivalent positions in the reserve organization with a reserve military rank or grade. *See American Fed'n of Gov't Employees v. Hoffman,* 543 F.2d 930, 932–33 (D.C.Cir.1976). An ART plays a vital role in combat readiness by training other reservists and serving as a mobilization asset when the unit is mobilized. *Id.*

The conditions for ART employment reflecting the agreement with OPM are delineated in Air Force Reserve Regulation 40–2 (AFRESR 40–2). *See American Fed'n of Gov't Employees,* 543 F.2d at 932–33. Under AFRESR 40–2, section 1(b), persons employed in ART positions must maintain active reserve status as a condition for employment. When an employee holding an ART position loses active reserve status and, therefore, no longer satisfies one of the requirements needed to effectuate the ART program, the employee will be removed from the ART position.

■ The cancellation of active reserve status is a uniquely military decision and is subject to review only within the military command. However, different rights in connection with removal are afforded an ART employee by Air Force regulations depending on whether the employee's loss of reserve status was voluntary, i.e., for reasons "within the individual's control," or involuntary, i.e., for reasons "beyond the individual's control." AFRESR 40–2, §§ 3, 4, 7(c).

Individuals who lose active reserve status for reasons within their control may be separated from the agency on 30–day's notice and are not entitled to any type of priority consideration with respect to other agency positions. *Id.* at § 3.[1] Individuals who lose ac-

tive reserve status for reasons outside of their control will also lose their ART position, but they are not immediately separated from the agency. Efforts must be made to place such employees in another position in the Air Force which does not require the active reserve status lost by the employee. *Id.* at §§ 4, 7(c). Further, these employees remain employed in the agency pending permanent placement for as long as a year or more as provided by AFRESR 40–2 sections 4 and 7(c). In sum, a determination that an employee's loss of reserve status was for an involuntary reason does not entitle the employee to restoration to the ART position he or she had occupied, but rather would provide rights to employment in some capacity other than in the ART position for the period of time and under the conditions set out in the regulations.

The Air Force regulations set out two lists of various grounds for loss of reserve status, one denominated "within the individual's control," i.e., voluntary, and one denominated "beyond the individual's control," i.e., involuntary. As explained in *Buriani v. Department of the Air Force,* 777 F.2d 674, 677 (Fed.Cir.1985), the phrase "within an individual's control" does not have a layman's meaning but is a term of art, resulting from OPM's and the Air Force's agreement. Thus, in *Buriani,* a loss of reserve status for failure to achieve promotion was held to be "voluntary" because it was so designated in the regulation. This court further held that the defense that such failure was not within the control of the individual is precluded by virtue of that regulation. The administrative judge in *Buriani,* therefore, had erred in making a collateral inquiry into the grounds for the employee's nonselection. Buriani's admission that he lost active reserve status due to his failure to attain promotion should have ended the inquiry. Because an ART employee's rights respecting immediate or delayed removal from the agency are only those afforded by the regulations, review of

---

1. ARTs who lose Air Force Reserve membership in their unit for reasons defined as "within their control" (paragraph 2b) will be separated from their civilian position according to applicable Air Force and Air Force Reserve regulations. Although these employees are not enti-

tled to any type of priority consideration, management may consider the employee for possible placement in other vacant positions. Placement efforts should not, however, delay separation from the ART position.
AFRESR 40–2, § 3.

the issue of voluntariness is precluded where the basis for loss of reserve status appears in the regulations as a reason within the individual's control.

## II.

We turn to application of the above principles to this case. Jeffries was employed by the Air Force at Eglin Air Force Base in Florida, as an Ordinance Equipment Mechanic, an ART position. On May 1, 1989, Jeffries' military commander recommended discharging Jeffries from the active reserves for alcohol abuse rehabilitation failure[2] and misconduct.[3] On August 22, 1989, a hearing was held before a military discharge board to determine whether Jeffries should be discharged from the active reserves. Jeffries was represented by military and civilian counsel and permitted to call witnesses on his behalf including witnesses who testified in his defense respecting his alcohol abuse and personality disorder. The military board found him unqualified for further military service by reason of misconduct and gave him an honorable discharge effective November 17, 1989.

On January 9, 1990, the Air Force notified Jeffries of its decision to remove him from his ART position for the nondisciplinary reason that he had lost his active reserve status. It was further determined the loss was voluntary. Thus, no efforts were required to place him in another position.

Jeffries appealed his removal to the MSPB.[4] Following a hearing on April 11, 1990, the administrative judge issued an initial decision reversing the Air Force's action and directing the Air Force to reinstate Jeffries with back pay and benefits. The administrative judge's decision was based on evidence which indicated that Jeffries used alcohol as a method of coping with a personality disorder. The administrative judge held that Jeffries' loss of reserve status was not due to circumstances within his control, but instead to his personality disorder and its accompanying coping mechanism.

Upon the Air Force's petition for review, the full board reversed the administrative judge's decision, stating that because Jeffries had failed to maintain his reserve military status, a prerequisite for holding an ART position, the MSPB's scope of review of the merits was limited to determining whether Jeffries' loss of reserve status was for a reason within his control. The board then held that since Air Force regulations list "misconduct" as a circumstance "within the individual's control," under the ruling of Buriani, the MSPB was precluded from further inquiry. Accordingly, the board affirmed Jeffries' removal. It is from this decision that Jeffries appeals.[5]

2. During Jeffries' period of service in the reserves, he was involved in a number of rehabilitation programs, including a mandatory appointment with Social Actions in 1987 and entrance into Alcohol Rehabilitation in 1988. He was also examined by a military clinical psychologist who recommended to Jeffries that he obtain regular counseling for his alcohol abuse and disorder personality. Jeffries was placed in the rehabilitation programs after several incidents of alcohol-related misconduct.

3. Specific acts of misconduct cited in Jeffries' discharge recommendation included (1) assault of another reservist and discussing classified information while intoxicated at a bar; (2) driving under the influence of alcohol resulting in an accident; (3) physically assaulting several members of his reserve squadron, threatening to kill a member of his unit, and threatening to rape the reservist's wife; and (4) harassing Air Force members while representing that he was a member of the Air Force Office of Special Investigations.

4. Jeffries sought restoration to his ART position as relief. However, with the agreement of the agency, he has now modified his relief request to conform to the rights afforded under the regulations.

5. In this case, Jeffries' commander initially recommended discharging Jeffries from the service on two grounds, (1) misconduct and (2) alcohol abuse rehabilitation failure. The latter is not on either list. While the full board analyzed whether alcohol abuse rehabilitation failure was a voluntary or involuntary basis for Jeffries' discharge from the reserves, the record clearly indicates that the military board's decision was based solely on "misconduct." The military board's Statement of Reasons begins, "Staff Sergeant David L. Jeffries is unqualified for further military service by reason of misconduct—a pattern of. misconduct." The military board's statement then continues by citing several alcohol related instances of misconduct. No mention is made of Jeffries' alcohol abuse rehabilitation failure. In any event, the ground of "misconduct" is sufficient in

### III.

 Misconduct is specifically defined by AFRESR 40–2, section 2(b)(3) as "within the individual's control." Jeffries argues that the MSPB, and this court on appeal, must look beyond the regulation and decide whether or not his personality disorder and its accompanying coping mechanism take his specific acts of misconduct outside of the regulation. We disagree. As held in *Buriani,* where the stated reason for discharge from the reserves is specifically defined as "within the individual's control" by the applicable regulation, "the scope of the inquiry in the adverse action before the MSPB is limited to whether an individual lost active status for that reason." 777 F.2d at 677.

Jeffries argues that *Buriani* is distinguishable because in that case the loss of active status was due to failure to receive a promotion, a purely subjective decision which would have required the court (or the board) to interject its own judgment into an extremely subjective process. Jeffries argues that the present case does not require inquiry into the Air Force official's mental processes, but rather requires analysis relating only to whether Jeffries' misconduct was for reasons within his control. Again, we disagree.

No distinction can be drawn between a decision by the military that a reservist's specific acts amount to misconduct sufficient to warrant separation from the active reserves and a decision by the military that a reservist is not entitled to a promotion. Both decisions are subject to appropriate review only within the military. The grounds for discharge from the reserves are not reviewable indirectly through the MSPB. Once the Air Force established that misconduct was in fact the ground for Jeffries' loss of reserve status, as stated in *Buriani,* the inquiry should have ended. *Id.* at 677.

In sum, we hold true to the inquiry outlined in *Buriani.* If a reservist loses active reserve status for a reason defined by the regulations as voluntary, we look only to see if the employee lost his or her reserve status itself for discharge and we do not address the issue of whether alcohol abuse rehabilitation failure was a circumstance beyond his control.

for that reason. Here, Jeffries does not deny that he lost his reserve status due to misconduct, a circumstance defined by regulation as "voluntary."

### IV.

Because Jeffries was removed from the Air Force Reserves for misconduct, a ground for removal which is *per se* "within the individual's control" under AFRESR 40–2, section 2(b)(3), upon Jeffries' removal from his ART position he had no rights to extended employment, priority placement, or any of the benefits given to those who lose their active reserve status for reasons beyond their control. Accordingly, the MSPB's decision is

AFFIRMED.