16 F.3d 419
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Shirley J. BATEY, Petitioner,
v.
DEFENSE MAPPING AGENCY, Respondent.
 No. 92-3570.
 United States Court of Appeals, Federal Circuit.
 Dec. 7, 1993.
 
 MSPB
 VACATED AND REMANDED.
 BEFORE NEWMAN, ARCHER and CLEVENGER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 Shirley J. Batey petitions for review the decision of the Merit Systems Protection Board (Board), Docket No. SE0351920021-I-1, affirming the decision of the Defense Mapping Agency (DMA) to eliminate her job by a reduction in force (RIF). The February 24, 1992, initial decision of the Administrative Judge (AJ) became the final appealable decision of the Board on July 15, 1992, when the Board denied review of the AJ's decision. We vacate and remand.
 
 
 2
 Batey's timely appeal to this court challenges the legality of the RIF on two grounds. First, Batey contends that DMA failed to demonstrate that Major Quin, the officer who initiated and effected the RIF, had the requisite authority within DMA to take the challenged action. With regard to this contention, Batey argues that DMA contumaciously withheld pertinent evidence that she had sought in a "Motion to Compel Agency to Establish Authority to Conduct RIF." Second, Batey argues that even if Major Quin had the requisite authority to conduct a RIF, the record in this case lacks substantial evidence that the RIF was taken for a lawful purpose.
 
 
 3
 On the record before this court, there can be no doubt that DMA withheld pertinent evidence from Batey during her quest to prove that Major Quin lacked authority to conduct the RIF. DMA's misconduct, of which the AJ seems to have been unaware, terminally poisoned the hearing in which DMA was assigned the burden of proving that Major Quin was authorized to conduct the RIF. We therefore vacate the Board's decision and remand the case for a new hearing before the AJ, who will have occasion to determine whether DMA's conduct warrants imposition of sanctions. See 5 C.F.R. Secs. 1201.41(b)(11), 1201.43 (1993); Baker v. Department of Health & Human Servs., 912 F.2d 1448, 1457 (Fed.Cir.1990); cf. M.A. Mortenson Co. v. United States, 996 F.2d 1177 (Fed.Cir.1993) (United States has waived sovereign immunity against awards of monetary sanctions in suits brought in the Court of Federal Claims). The explanation of our decision follows.
 
 
 4
 * Batey was employed as a Supervisory Supply Technician, GS-2005-8, with the Pacific Office of the Defense Mapping Agency at Hickam Field, Hawaii. She supervised five supply office employees. Batey's supervisor directly supervised her and five warehouse employees and indirectly supervised the five supply office employees. In October 1990, Major Michael D. Quin, III, assumed command of the Pacific Office. During an annual review of personnel resources, Major Quin assessed the roles of Batey and her supervisor and concluded that the use of two supervisors to oversee ten staff members was excessive. In order to correct this situation, Major Quin initiated the RIF which eliminated Batey's job. Batey then was offered and accepted, at no reduction in pay, a transfer to a GS-2005-6 Supply Technician position with the United States Air Force 15th Supply Squadron, also located at Hickam Field.
 
 II
 
 5
 Whenever a person adversely affected by a RIF challenges the legality of that action, longstanding precedent burdens the agency with the obligation to prove by a preponderance of the evidence that the RIF procedure was properly invoked. Wilburn v. Department of Transp., 757 F.2d 260, 262 (Fed.Cir.1985); Losure v. Interstate Commerce Comm'n, 2 M.S.P.R. 195, 201 (1980). An agency meets its initial burden of production by making a prima facie showing that it conducted the RIF for any of the five reasons specified in 5 C.F.R. Sec. 351.201(a). See Bacon v. Department of Housing & Urban Dev., 757 F.2d 265, 269 (Fed.Cir.1985). This requirement that the agency establish a proper reason for initiating a RIF merely reflects the unexceptional proposition that an agency must offer a plausible, facially valid basis for taking personnel actions.
 
 
 6
 Upon meeting its initial burden of production, the agency enjoys a strong presumption that its officers acted in good faith and otherwise in accordance with law in conducting the RIF, and the burden shifts to the aggrieved employee to rebut this presumption with "clear and convincing evidence" that, for example, the agency's reason masks an ulterior, illicit motive for the RIF, or that the official who initiated the RIF lacked the authority to do so. See Dancy v. United States, 668 F.2d 1224, 1226 (Ct.Cl.1982); George v. United States, 166 Ct.Cl. 527, 531 (Ct.Cl.1964).
 
 III
 
 7
 For reasons unknown to this court, Batey apparently suspected that Major Quin might have lacked the requisite authority to initiate a RIF in his command. Consequently, Batey repeatedly requested DMA to produce documentary proof of Major Quin's authority. In response to those requests, DMA on two occasions produced the same document, DMAINST 1429.1, POC, 1 August 1980, which is entitled "Subject: Adverse Actions." DMAINST 1429.1 provides "policy, standards, and procedures to be followed in disciplinary and nondisciplinary civilian employee removals, suspensions, furloughs without pay, and reductions in grade or pay." The document also explicitly provides, however, in paragraph 9b., Actions Not Covered, that "[t]hese procedures do not apply to ... [a] reduction-in-force action." Id. para. 9b. (1)(b) (emphasis added).
 
 
 8
 Batey's counsel received DMAINST 1429.1 for the second time by DMA's facsimile transmission on January 8, 1992. The next day, Batey filed with the AJ her Motion to Compel Agency to Establish Authority to Conduct RIF. The text of that motion reads:
 
 
 9
 Appellant moves for an order to compel the Agency to provide documentation to establish its authority to conduct this RIF. Despite repeated requests from [Batey], the Agency activity which effected the action has been unable (or refused) to produce any delegated authority for the conduct of this RIF.
 
 
 10
 In response to [Batey's] multiple requests the Agency has on two separate occasions produced the same document (Exhibit 1 attached) [DMA Instruction 1429.1], which document only provides delegated authority for the conduct of Chapter 752, Adverse Actions but by those very terms excludes Reduction-In-Force. See Section 9.b. Page 6.
 
 
 11
 Just as [Batey] must show that the subject matter of her appeal is within the jurisdiction of the Board and meets other time and filing requirements in order to obtain a hearing and/or decision on the merits, so should an Agency be required to establish its basic authority to undertake the action being appealed. Particularly in a case such as this where the Agency placed no documents establishing its authority in the Agency File and has failed to produce such authority. [Batey] should not be required to go to the further expense of preparing for a hearing on the merits ... until the Agency has established the basic legitimacy of the underlying action.
 
 
 12
 It is requested that the Agency be compelled to produce such authority immediately....
 
 
 13
 On the day the motion was filed, the AJ and counsel for DMA and Batey discussed the subject of Major Quin's authority in a telephonic conference. The AJ's memorandum of that conference states that "[t]he agency is reviewing this matter, and it will be addressed by the parties at the hearing." On January 17, 1992, during another such conference, the subject of Major Quin's authority arose again, and "appellant's motion to compel the agency to establish its authority to conduct the reduction in force was denied. The [AJ] stated that this issue would be considered as part of the agency's burden of proof in the appeal." AJ's Memorandum of January 17, 1992, Telephonic Conference.
 
 
 14
 During the hearing before the AJ, DMA offered testimony from Major Quin and his superior officer that Major Quin was authorized to initiate and conduct any RIF that did not alter the total number of personnel allotted to his command, as was true of the RIF affecting Batey. In response, Batey argued that the agency had to proffer some form of documentary proof concerning the delegation of RIF authority to Major Quin in order to satisfy DMA's burden of demonstrating the validity of the RIF. The AJ and Batey recognized that DMAINST 1429.1 was irrelevant to the issue, since it expressly excludes RIF actions from its coverage. Perhaps laboring under the impression that DMA has no RIF regulations of its own, the AJ turned to the general RIF regulations promulgated by the Office of Personnel Management and published at 5 C.F.R. Sec. 351.201-.902 (1991). Those regulations do not address the issue of which persons within any agency may have the authority to conduct a RIF. Consequently, the AJ concluded that those "regulations place no restriction on how an agency may internally assign the authority to make such decisions." Accordingly, in the light of DMA's testimony that Major Quin could effect a RIF so long as it did not alter the overall number of persons in his command, the AJ held that DMA met its burden with regard to Major Quin's authority.
 
 IV
 
 15
 As the reader may have divined, the plot thickened. When Batey appealed to the Board, DMA included in the appendix to its "Response to Petition for Review" copies of DMAINST 1401.1 and 1410.1.
 
 
 16
 DMAINST 1401.1, dated September 1, 1981, is entitled "Subject: DMA Civilian Personnel Management Policy, Authority, Organization, and Responsibility." This document expressly authorizes the initiation and implementation of RIFs "after receiving prior approval of the Director, DMA." The document cancels "DMAINST 1401.1, same subject, dated 11 October 1972." On March 24, 1982, DMA refined its procedures concerning RIFs with the issuance of DMAINST 1410.1, whose sole subject is "Reduction in Force and Transfer of Function." On November 17, 1987, DMA promulgated a revised version of the same instruction, and it is this document that DMA appended to its opposition to Batey's appeal to the Board. This document provides that all RIFs must be approved in accordance with the requirements of 1410.1. These include the requirement that DMA headquarters be given advance notice of any RIF, and the requirement that headquarters approve in advance RIFs affecting ten or more employees. The instruction also requires the agency to provide person who may be affected by a proposed RIF with a copy of the Instruction.
 
 
 17
 Since at least September 1, 1981, DMA has been in possession of written instructions that dictate when, how, and in some instances, by whom RIFs may be effected in the agency. The testimony of both Major Quin and his predecessor Major Walek at the hearing suggests that both of them may well have been aware of the extensive DMA regulations covering RIFs. For example, Major Quin testified: "I don't eliminate the job. I just put in the paperwork to do it. I'm not the one that does it. Headquarters does that." Major Quin also testified that "Headquarters has the right to object" to a proposed RIF action. In the words of Major Walek, "to ... delete a position is really a recommendation that you make to the higher Headquarters. And for the most part, they will probably follow your recommendation." This testimony tracks almost literally the requirements stated in the revised DMAINST 1410.1.
 
 V
 
 18
 The right to a hearing in a RIF appeal is statutory. 5 U.S.C. Sec. 7701(a)(1) (1988). Certain propositions in American jurisprudence are self-evident, among them the proposition that the right to a hearing means the right to a fair hearing. This case was tried before an AJ who expressly reserved the issue of Major Quin's authority for decision at trial. DMA before and during the trial had in its possession documentary evidence undeniably germane to a fair and correct decision on the authority question. DMA refused to disclose that documentary evidence to Batey and the AJ. Batey is thus entitled to proper discovery and a fair hearing on the issue of Major Quin's authority to instigate the RIF.
 
 
 19
 The decision of the Board is therefore vacated and the case is remanded.
 
 
 20
 Costs to Batey.